IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SAMUEL E. McCLENTON,

    Plaintiff,

v.                                No. 04-2889 B

OFFICE EVOLUTIONS, INC.,
OFFICE FURNITURE USA,
RJR/JPJ, LLC, and CHORDUS, INC.,

    Defendants.

_____

ORDER GRANTING THE MOTION OF DEFENDANTS OFFICE FURNITURE USA AND
CHORDUS, INC. TO DISMISS, OR, ALTERNATIVELY FOR SUMMARY JUDGMENT
AND DISMISSING DEFENDANT, RJR/JPJ, LLC

_____

Plaintiff, Samuel E. McClenton, brought this action against the Defendants[1], Office Evolutions, Inc. ("Office Evolutions"), Office Furniture, USA ("Office Furniture") and Chordus, Inc. ("Chordus"), alleging discrimination on the basis of race and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII" or the "Act"), 42 U.S.C. § 2000e, et seq. Before the Court is the motion of Office Furniture and Chordus (collectively referred to as "the Defendants") to dismiss pursuant to Rules 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment under Rule 56.

In the instant motion the Defendants argue that subject matter jurisdiction does not exist on

---

[1] Plaintiff notes in his response to the instant motion that the parties have agreed to dismiss, by separate order, RJR/JPJ, LLC from the action. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss ("Pl.'s Resp.") at 2.)

the grounds that they were not previously named as Plaintiff's employer in his complaints of discrimination and retaliation filed with the Equal Employment Opportunity Commission ("EEOC"), and further, that they are in fact, not Plaintiff's "employer" for purposes of Title VII.  Rule 12(b)(1) permits dismissal of a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Defendants' motion attacks the factual existence of subject matter jurisdiction, thus, there is no presumption that the factual allegations set forth in the complaint are true and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994); see also RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1135 (6th Cir. 1996).  In assessing the validity of jurisdiction, the Court has wide discretion to consider materials outside the complaint.  Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  The plaintiff bears the burden of demonstrating subject matter jurisdiction.  RMI Titanium Co., 78 F.3d at 1134.

Before seeking redress in the courts, Title VII requires an aggrieved employee to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  42 U.S.C. § 2000e-5.  If the EEOC does not obtain compliance with the provisions of the Act, the statute provides that "a civil action may be brought [by the aggrieved employee] against the respondent named in the charge."  42 U.S.C. § 2000e-(f)(1).  Thus, "[a]s a general rule, failure to name a party in the EEOC complaint precludes later civil action against that individual in court."  Lynn v. JER Corp., 573 F.Supp. 17, 19 (M.D. Tenn. 1983) (citing EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1092 (6th Cir. 1974)).  The purpose of this rule is to give the charged party both notice and an opportunity to participate in conciliation proceedings aimed at voluntary compliance with the Act.  Id.  However, courts have recognized that the procedures of

Title VII were not "intended to serve as a stumbling block to the accomplishment of the statutory objective." Evans v. Sheraton Park Hotel, 503 F.2d 177, 181 (D.C. Cir. 1974). Because complainants often file EEOC charges without the assistance of counsel or experience in the jurisdictional requirements of the Act, charges must be construed with "utmost liberality." Eggleston v. Chicago Journeymen Plumbers Local Union No. 130, U.A., et al., 657 F.2d 890, 906 (7th Cir. 1981)

Accordingly, where it can be shown that the purposes of the general rule have been realized, that is, that the unnamed party has been provided adequate notice and an opportunity to participate in the conciliation proceedings, courts generally hold that the charge is sufficient to confer jurisdiction over that party. Eggleston, 657 F.2d at 905. The Sixth Circuit has held that an unnamed party may be sued under Title VII where there is a "clear identity of interest" between it and the named party. Romain v. Kurek, 836 F.2d 241, 245 (6th Cir.1987). In Romain, the court adopted the test established by the Third Circuit in Glus v. G.C. Murphy Co., 562 F.2d 880 (3d Cir.1977) for determining whether parties share an identity of interest. Under this test, courts are instructed to consider four factors, including "(1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] (4) whether the unnamed party has in some way represented to the complainant that its relationship with [him] is to be through the named party." Romain, 836 F.2d at 245-46.

McClenton asserts in his complaint that, at the time of the alleged Title VII violation, he was an employee of Office Evolutions, Office Furniture, and Chordus. (Compl. ¶ 13.) However, in his EEOC complaints, Plaintiff named only Office Evolutions as his employer. (Compl. Ex. A, B.) It is undisputed among the parties that Office Furniture is an operating division of Chordus. (Aff. Gary Kitchen ("Kitchen Aff.") ¶ 2.) Further, it is uncontested that the Defendants are contractually related to Office Evolutions solely through a "License Agreement" executed by Office Furniture and Office Evolutions in which Office Evolutions was permitted to sell Office Furniture products in its showrooms. (Def.'s Mot. Ex. B.) During the time of his employ, Plaintiff worked as an installer in a building in Memphis, Tennessee which bore the names of both Office Evolutions and Office Furniture. (Aff. Samuel E. McClenton ("McClenton Aff.") ¶ 6.) In support of his contention that he was employed by the Defendants, Plaintiff offers Office Evolutions' letterhead, the business card of an Office Evolutions' sales associate, and photographs of the building in which he worked and company vehicles which all prominently display both the Office Evolutions and Office Furniture names. (Pl.'s Resp., Ex. 1, 2, 5, 6, 7.) McClenton states in his affidavit submitted in response to the instant motion, that "there was no difference between Office Evolutions and Office Furniture, USA during [his] tenure there." (McClenton Aff. ¶ 6.) Based on the information submitted, Plaintiff was clearly aware of the existence of Office Furniture. Therefore, the Court concludes that with reasonable effort he could have included that party in his EEOC complaint even without an understanding of the legal relationship between it and Office Evolutions.[2] See Hulett v. America's

---

[2] Because the evidence cited by Plaintiff does not include Chordus, it is possible that Plaintiff may reasonably have been unaware of its existence at the time of his EEOC complaint. However, even assuming that the weight of the first Romain factor is in Plaintiff's favor, a clear identity of interest between Chordus and Office Evolutions is not established under the remainder of the test. Plaintiff's complaint does not allege that Chordus has any relationship with Office Evolutions other than that created by the contract between its operating division, Office Furniture, and Office Evolutions. Because the

Finest Service Co., No. 1:03CV2497, 2005 WL 2233261, * 7(N.D. Ohio Sept. 14, 2005) (finding that the first factor weighed in favor of the unnamed party where the plaintiff was aware of its existence and could easily have filed against it if she believed it to be her employer).

Under the second factor, the Court also finds that the facts weigh against finding a clear identity of interest. The Defendants assert that they are only contractually related to Office Evolutions through a licensing agreement and that they do not share common management, ownership, or financial control with Office Evolutions. (Kitchen Aff. ¶ 4.) Further, they maintain that they do not have "any form of relationship with Office Evolutions' employees" or any authority to make decisions concerning conditions or existence of employment. (Kitchen Aff. ¶ 5.) Other than the evidence of Office Evolutions' use of Office Furniture's trade dress and corporate insignia in marketing and advertising, which is provided for in the parties' Agreement, Plaintiff does not allege any common interest, control, or management of employees. Accordingly, it cannot be said that the interest of the other Defendants in this action are so similar to those of Office Evolutions that it would be unnecessary to include them in the EEOC proceedings.

The third and fourth factors also weigh in the Defendants' favor. There is no indication on the facts that the Defendants were aware of or had an opportunity to participate in the EEOC investigation or conciliation proceedings. Compare Jackson v. Federal Express Corp., No. 04-2470-MA/A, 2006 WL 181964, *3 (W.D.Tenn.2006) (finding an identity of interest where the EEOC contacted the unnamed party during the conciliation proceedings and that party responded

---

Court concludes that the contract alone does not create a similarity of interest in the instant action (See discussion *infra* p.5) and because Plaintiff has presented no evidence of an independent relationship creating such common identity between Office Evolutions and Chordus, the second factor weighs in favor of Chordus. Finally, because Chordus was not provided notice or an opportunity to participate in voluntary proceedings and therefore, likely suffered prejudice, the third and final factors also direct a finding in favor of Chordus. See Romain, 836 F.2d at 245-46.

as if it were the named party). Because they were denied an opportunity to seek to resolve the claim informally or to assert a defense at an earlier stage, the Defendants have suffered prejudice from not being named in Plaintiffs EEOC complaint. Finally, other than confusion resulting from common marketing and advertising, Plaintiff has not asserted that the Defendants have in any way represented to him that contact with or a relationship to them should be conducted through Office Evolutions. Considering these factors, the Court finds that there is no "clear identity of interest" between Office Evolutions and the other Defendants sufficient to excuse Title VII's statutory requirement that they be provided notice and an opportunity to participate in conciliation proceedings prior to suit in federal court.

However, even assuming an identity of interest did exist, Plaintiff has failed to establish that the remaining Defendants were his "employer" for purposes of Title VII, and thus, has not presented a prima facie case under Title VII sufficient to survive summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988).

To prevail on a Title VII claim against them, McClenton must show, as a threshold matter, that Office Furniture and Chordus functioned as his employer. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and

6

any agent of such a person." 42 U.S.C. § 2000e(b). Courts are to give liberal construction to the interpretation of the employer and employee provisions of Title VII. Quijano v. University Federal Credit Union, 617 F.2d 129, 131 (5th Cir. 1980). Plaintiff does not maintain the Defendants were his direct employer or that they had total control or ultimate authority over employment decisions related to him. Rather, McClenton maintains that there is a "sufficient indication of an interrelationship" between those Defendants and Office Evolutions that they could be "jointly responsible" for the acts of his immediate employer. (Pl.'s Resp. at 8.)

As noted by the Sixth Circuit in Swallows v. Barnes and Noble Book Stores, Inc., 128 F.3d 990 (6th Cir. 1997), the courts have recognized various doctrines by which a defendant who is not in a direct employment relationship with the plaintiff may still be considered an employer in employment discrimination actions, including (1) when the defendants and the direct employer are "so interrelated that they may be considered a 'single employer;'" (2) when the defendants have "control over [the direct employer's] employees sufficient to show that the [] companies are acting as a 'joint employer;'" and (3) when the direct employer "was acting as the 'agent of' the defendants." Swallows, 128 F.3d at 990. As noted above, Plaintiff's theory of liability appears to rest on the 'joint employer' doctrine, which applies when "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Id. at 993 n.4 (citing Nat'l Labor Relations Board v. Browning-Ferris Ind. of Pennsylvania, Inc., 691 F.2d 1117, 1123 (3rd Cir. 1982)). To be joint employers, the companies need not be an integrated enterprise, but must "share or co-determine those matters governing essential terms and conditions of employment." Nat'l Labor Relations Board, 691 F.2d at 1124. Whether sufficient control exists

7

to constitute a joint employer relationship is a factual question, "requiring the court to consider such factors as authority to hire, fire, and discipline employees, promulgation of work rules and conditions of employment, issuance of work assignments and instructions, and supervision of employees' day-to-day activities." EEOC v. Regency Windsor Management Co., 862 F.Supp. 189, 191 (W.D. Mich. 1994).

In the instant matter, the Defendants maintain that their relationship with Office Evolutions, Plaintiff's direct employer, is one of franchisor - franchisee, in which the franchisor, Office Furniture, exercised no control over the conditions or relationship of employment of Office Evolutions' employees. In support, the Defendants offer the affidavit of Gary Kitchens, the President and Chief Executive Officer of Chordus, who affirmatively states that the Defendants do not share any form of relationship with or control over the employment relationship of the Plaintiff or any other employees of Office Evolutions. (Kitchens Aff. ¶ 5.) In addition, the Defendants present the License Agreement defining the relationship between them and Office Evolutions, which references the extent of the franchisor's influence in the employment matters of the franchisee. In the Agreement, Office Furniture agreed to provide an initial orientation and a 2-3 day training seminar for personnel of Office Evolutions. (Def.'s Mot. Ex. B at 9.1; 9.4.) Further, the Agreement provided that Office Evolutions agreed to

> maintain a competent, conscientious and qualified staff, including knowledgeable showroom sales personnel and to keep [Office Furniture] currently advised of all of [Office Evolutions'] personnel, including management personnel, associated with [its] Showroom. [Office Evolutions] shall identify one employee as the manager of [the] Showroom.
>
> . . .
>
> [Office Evolutions] agrees to take all appropriate and necessary steps to assure that all personnel associated with [its] Showroom are familiar with the [Defendant's products] to the extent necessary and appropriate for such personnel to perform their

8

> duties and functions in an efficient and effective manner consistent with . . . [Office Furniture's] standards.

(Def.'s Mot. Ex. B at 10.1; 10.3). However, the Agreement expressly states that the companies are "independent contractors and are not and shall not be considered joint venturers, partners, or agents of each other." (Id. at 16.1.) Except as specifically provided in the agreement, both Office Furniture and Office Evolutions agreed that "[n]either party shall has responsibility for or control over any employee of the other party." (Id.)

In response, Plaintiff offers evidence of common marketing and points to conditions of the licensing agreement in which Office Furniture maintains authority to control the location, design, appearance, and maintenance of the showroom display of its products. However, none of the facts alluded to by Plaintiff demonstrate that either Chordus or Office Furniture shared or in any way co-determined matters relating to the "essential terms and conditions" of McClenton's employment. Nat'l Labor Relations Board, 691 F.2d at 1124. Because the Defendants were neither direct nor joint employers of the Plaintiff, his Title VII claim against them fails as a matter of law.

Based on the foregoing, the motion of the Defendants, Office Furniture and Chorus, to dismiss, or alternatively for summary judgment is hereby GRANTED. Inasmuch as no order has been entered, the Court, upon agreement of the parties, DISMISSES Defendant RJR/JPJ, LLC.

**IT IS SO ORDERED** this 1st day of March, 2006.

> s/ J. DANIEL BREEN
> UNITED STATES DISTRICT JUDGE

9